IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSE AGUSTIN VILLAGOMEZ-SAUCEDO,

      Petitioner,

v.                                  Civ. No. 12-204 MV/GBW

UNITED STATES,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, *doc. 1*.  On September 25, 2012, Judge Vasquez dismissed all of Petitioner's claims save one—his allegation that his trial counsel was ineffective for failing to file an appeal.  *Doc. 15*. Having held an evidentiary hearing on that issue on March 6, 2013, I find that Petitioner has failed to demonstrate that his trial counsel was constitutionally ineffective.  I therefore recommend that the Court dismiss Petitioner's remaining claim and deny Petitioner's motion.

## I. BACKGROUND

Petitioner Jose Agustin Villagomez-Saucedo was arrested on April 28, 2010.  *See United States v. Villagomez-Saucedo*, 1:10-cr-1559 [hereinafter *Underlying Case*], *doc. 31*.  In a superseding indictment, filed on August 25, 2010, Petitioner was charged with: (1) Re-entry of a Removed Alien in violation of 8 U.S.C. § 1326(a)-(b); (2) Illegal Alien in

Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(5)(A) and

924(a)(2); and (3) Felon in Possession of a Firearm and Ammunition in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*

Petitioner was appointed an attorney, Mr. James Baiamonte, on April 29, 2010.

*Id., doc. 6*. On June 3, 2010, at his arraignment, Petitioner pled not guilty to all counts.

*Id., doc. 18*. The Court scheduled Petitioner's case to be tried on September 29, 2010. *Id.,*

*doc. 29*. On September 2, 2010, Mr. Baiamonte sent a letter to the presiding judge, the

Honorable Bruce D. Black, notifying him that Petitioner had expressed a desire to

replace Mr. Baiamonte as his attorney. *Id., doc. 54*. The Court held a hearing on

September 27, 2010, at which Petitioner stated he did not want new counsel. *Id., doc. 51*.

On September 29, 2010, a jury was impaneled and Petitioner's trial was slated to

begin. *See id., doc. 65* at 3:1-14. Before the proceedings commenced, however, Petitioner

opted to change his plea to guilty on all counts. *See id., docs. 53, 65* at 3:15-16. Instead of

a trial, the Court proceeded to conduct a plea hearing. *See id., doc. 65*. During the plea

hearing, the Court engaged in an extended colloquy with Petitioner and his counsel

regarding the decision to plead guilty, including the rights waived and risks presented.

*See generally id.* With Petitioner present, Mr. Baiamonte advised the Court that

Petitioner "wishes to enter a plea to the indictment, obviously without benefit of the

plea agreement as we're past the 11th hour. And my client does so knowing the final

decision as to sentencing will be left to the sentencing court. We are free to argue for

2

appropriate sentence, as is the United States.  The final decision will be left up to the

Court."  *Id.* at 3:15-22.  The Court then asked Mr. Baiamonte whether he had "gone over

the potential penalties" with Petitioner.  *Id.* at 3:23-24.  In response, Mr. Baiamonte said

that he had "informed [Petitioner] of my educated estimate about the potential

penalties.  And he's very mindful of the fact that my opinion is non-binding, it's just

simply informative to him."  *Id.* at 3:25-4:3.  Moreover, when the Court asked Petitioner

if "anyone made any promises to [him]," Petitioner answered "no."  *Id*. at 8:12-14.  At

the end of the hearing, after asking whether Petitioner was "satisfied as to your

attorney's explanation of the sentencing guidelines" and receiving an affirmative

response, the Court found that Petitioner's guilty plea was "free and voluntary" and

that Petitioner "fully underst[ood] the charge and potential penalties."  *Id.* at 12:9-13.

As such, the Court accepted the guilty plea and indicated that it would enter a

judgment finding Petitioner guilty.  *See id.* at 11:21-12:2.  Petitioner's guilty plea was not

entered pursuant to a plea agreement.  *See id.* at 3:15-17.

     Petitioner's Presentence Investigation Report (PSR), published on December 16,

2010, determined that pursuant to the Federal Sentencing Guidelines ("the

Guidelines"), Petitioner's combined adjusted offense level was 26.  *Exhibit 1* at 8.  The

PSR suggested a two-level reduction in the offense level due to Petitioner's acceptance

of responsibility, for a total offense level of 24.  *Id*.  Based on a total offense level of 24

and a criminal history category of II, the Guidelines suggest an imprisonment range of

57 to 71 months.  *Id*. at 15.  The United States objected to the two-level reduction

because Petitioner's guilty plea on the morning of trial was "untimely" and led to the

waste of significant time and resources in preparation for trial.  *Underlying Case, doc. 55*.

Petitioner's counsel filed a sentencing memorandum "to request a sentence of 57

months" because "Defendant should still receive some benefit from saving the further

expenditure of time and effort on a trial."  *Id., doc. 57* at 1 (emphasis omitted).

Petitioner was sentenced on February 24, 2011.  *See id., doc. 58*.  During the

sentencing proceedings, Mr. Baiamonte confirmed that he had reviewed the PSR with

Petitioner.  *Id., doc. 73* at 3:8-10.  He also said that Petitioner was aware of his right to

address the Court directly but did "not wish to avail himself of that opportunity."  *Id*. at

3:21-4:1.  Judge Black then said that while he would not deny Petitioner the two-level

reduction in his offense level,

> I'm also not going to sentence at the bottom of the range as I normally do
> since it's clear that Mr. Villagomez did put the Court to the test, and also
> required the government to bring all of their witnesses, and more
> importantly for me, disrupted the lives of all potential jurors.

*Id*. at 4:15-24.  Judge Black therefore sentenced Petitioner to a term of 68 months

imprisonment, followed by three years of supervised release.  *Id*. at 5:13-25.  At the close

of the proceedings, Judge Black explained to Petitioner that he "ha[d] the

right . . . within 14 days of the entry of judgment, . . . to appeal the final sentence of this

Court."  *Id*. at 6:20-23.  Judgment was entered on March 2, 2011.  *Id., doc. 59*.  No notice

of appeal was filed.

4

On February 27, 2012, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  *Villagomez-Saucedo v. United States*, 1:12-cv-204-BB-GBW [hereinafter *Instant Case*], *doc. 1*.  Petitioner alleged ineffective assistance of trial counsel on four grounds: (1) his attorney forced him to plead guilty by coercion or false promises; (2) his guilty plea was uninformed due to his attorney's failure to properly advise him; (3) his attorney failed to fully contest the charges; and (4) his attorney failed to file an appeal despite Petitioner's instructions to do so.  *See id*.  On August 9, 2012, I issued my Proposed Findings and Recommended Disposition (PFRD), recommending that the Court dismiss the first three claims as meritless.  *Id., doc. 13*.  I found that an evidentiary hearing was necessary to resolve to the fourth claim because Petitioner and his trial counsel, Mr. Baiamonte, had provided contradictory affidavits regarding whether Petitioner requested an appeal.  *Id*. at 15-16.

On September 25, 2012, the Court adopted my PFRD and ordered me to conduct an evidentiary hearing.  *Id., doc. 15*.  I appointed counsel for Petitioner on October 2, 2012, and conducted the evidentiary hearing on March 6, 2013.  At the hearing, both Mr. Baiamonte and Petitioner testified.  *See id., docs. 27, 28*.

## II.   EVIDENTIARY FINDINGS

At issue in this case is whether Petitioner requested his counsel, Mr. James Baiamonte, to file an appeal of his sentence.  Petitioner and Mr. Baiamonte agree that any discussion about an appeal occurred in the moments directly after Petitioner's

sentencing hearing.  However, they disagree as to the nature of that discussion.

Petitioner claims that he explicitly requested an appeal: "[W]hen I heard that the judge

said that I had 14 days to appeal my sentence, I called Mr. Baiamonte over to the jury

box where we were seated and told him, 'I think we should appeal my sentence.'"

*Instant Case, doc. 28* at 37:16-19.  In response, "Mr. Baiamonte didn't say anything. . . .

[H]e heard me but, you know, he put his hat on and, you know, left."  *Id.* at 37:21-23.

Mr. Baiamonte contends that immediately after the sentencing hearing, he directly

asked Petitioner whether he "want[ed] to do the appeal."  *Id*. at 15:13-19.  When

Petitioner did not respond, "I asked again, 'Do you want to do the appeal?' . . .

[Petitioner's] eyes were cast down and I asked again and he shook his head from side to

side, indicating a no.  And that's when I asked, 'Well, if you change your mind, give me

a call.'"  *Id*. at 16:1-6.

  When there is conflicting testimony at a § 2255 evidentiary hearing, "it is

ultimately the role of the district court . . . to assess credibility and weigh the evidence

before it."  *United States v. Gonzalez*, 209 F. App'x 842, 846-47 (10th Cir. 2006) (citing

*United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001)).  For the following

reasons, I find Mr. Baiamonte's account to be more credible than Petitioner's.

  I do not find Petitioner's testimony credible for several reasons.  First,

Petitioner's explanation for what motivated his desire to appeal is inconsistent with the

record.  At the hearing, Petitioner claims that he was "shocked" at having received a

sentence of 68 months. *Instant Case, doc. 28* at 37:8-11. Petitioner claims he was shocked because he "thought [he was] going to receive [a sentence of] 57 months." *Id*. at 36:25-37:5. However, Petitioner was repeatedly put on notice that he should have no firm expectation for a particular sentence. At the plea hearing, his counsel explained in his presence that there was no plea agreement and that Petitioner was pleading guilty "knowing the final decision as to sentencing will be left to the sentencing court. We are free to argue for appropriate sentence, as is the United States. The final decision will be left up to the Court." *Underlying Case, doc. 65* at 3:15-22. Moreover, when the Court asked Mr. Baiamonte whether he had "gone over the potential penalties" with Petitioner, Mr. Baiamonte said that he had "informed [Petitioner] of my educated estimate about the potential penalties. And he's very mindful of the fact that my opinion is non-binding, it's just simply informative to him." *Id.* at 3:23-4:3. Furthermore, Petitioner indicated under oath that no one had made any promises to him regarding his sentence. *Id*. at 8:12-14. Finally, Petitioner concedes that Mr. Baiamonte reviewed the presentence report—a report which established a guideline sentence range of 57 to 71 months—with him prior to the sentencing hearing. *Instant Case, doc. 28* at 36:4-15; *Exhibit 1* at 15. Given these facts, it is hard to believe that Petitioner was confident of a low end sentence and was "shocked" to receive a sentence on the higher end of the guideline range.

Second, and perhaps more significantly, Petitioner's testimony at the hearing regarding what motivated his desire to appeal is distinctly different than the explanation he provided earlier to this Court.  In his Affidavit filed to "substantiate" his request for § 2255 relief, Petitioner "solemnly swears and states that he had full intent to appeal his gun conviction and sentence due to the fact that Affiant was innocent of the charge/count in the indictment and the fact[s] will substantiate this to be true." *Instant Case, doc. 3* ¶ 20.  Nowhere in his Affidavit does Petitioner describe that his motivation to appeal arose out of his supposed shock over not receiving a low end sentence of 57 months.  *See id*.  This claim also does not appear in Petitioner's § 2255 Motion or his Memorandum in Support thereof.  *See id., docs. 1, 2*.[1]  Consequently, the Court finds Petitioner's current explanation for what motivated his alleged request for the filing of an appeal to be suspect.[2]

Third, Petitioner's claim that he requested Mr. Baiamonte to file an appeal on the day of sentencing is at odds with the long delay before he filed the instant § 2255 motion or raised the claim in any other manner.  The testimony at the hearing clearly established that Petitioner was extraordinarily assertive and active in his defense.  *Id., doc. 28* at 6:4-23.  Even allowing for the difficulties Petitioner might have experienced

[1] In fact, the only mention of Petitioner's displeasure with the sentence (as opposed to the conviction) arises in his Motion.  *See Instant Case, doc. 1* at 9-10.  There he claims that his counsel made him a "three point[s] promise," guaranteeing him the downward adjustment for acceptance of responsibility.  *Id*. at 10.  As discussed above, any claim of such a promise directly contradicts the record.
[2] This is not to say that someone in Petitioner's position would not be upset at not receiving a sentence they had hoped for.  Or that such dismay could not motivate a desire to appeal the sentence.  But, in this case, the issues with Petitioner's explanation as described above reflect poorly on his credibility.

8

contacting his counsel immediately after sentencing, it is still incredible that he waited a year after his alleged request for an appeal before raising this claim.

Fourth, Petitioner's description of Mr. Baiamonte's reaction to his alleged request to appeal is highly unlikely. Petitioner claims that he clearly told Mr. Baiamonte that he wanted to appeal and, in response, Mr. Baiamonte simply walked away. *Id*. at 37:16-23. Even assuming Mr. Baiamonte was exasperated with Petitioner as a client, or for some other reason did not want to file an appeal, the non-response would be unusual in that circumstance. At the very least, counsel would likely express, perhaps with some impatience, the utter futility of appealing Petitioner's sentence. In short, I find Mr. Baiamonte's description of events more likely than Petitioner's version.

Finally, Petitioner has a significant incentive to remember and describe the events immediately after his sentencing as involving a clear request that an appeal be filed. If the Court accepts his version, then he would certainly be entitled to a delayed appeal. *See United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

On the other hand, several facts make Mr. Baiamonte's testimony credible. First, as just noted, his description of the events immediately after the sentencing hearing simply make more sense. Second, it is unclear why Mr. Baiamonte would not have filed the appeal if so requested. Such an appeal would call for a standard *Anders*[3] brief yet would have yielded a significant CJA payment. Third, perhaps because of Petitioner's

---

[3] *See Anders v. California*, 386 U.S. 738, 744 (1967).

very active involvement in his case, Mr. Baiamonte had a very clear memory of Petitioner and his case.  For example, Mr. Baiamonte remembered Petitioner's temporary insistence on raising a "UCC defense," the name of his girlfriend, and visiting Petitioner in the holding cell on the morning of trial three times because Petitioner refused to change out of the prison uniform and into ordinary clothes for trial.  *Instant Case, doc. 28* at 8:16-24, 9:1-10:14, 18:13-14.  The uniqueness of these events and Mr. Baiamonte's resulting clear memory of Petitioner's case distinguishes his testimony from that of defense counsel who understandably do not recall details of interactions with a client and thus testify only on the basis of their pattern and practice. *See, e.g., United States v. Vazquez-Pulido,* 45 F. App'x 833, 834 (10th Cir. 2002); *United States v. Collins*, 2006 WL 840354, at *4 (W.D. Okla. Mar. 28, 2006).  Finally, Mr. Baiamonte's testimony does not have the embellished clarity expected if he were simply trying to foreclose an ineffective assistance of counsel claim.  Specifically, Mr. Baiamonte testified that when he asked Petitioner whether he would like to appeal the sentence, Petitioner initially did not respond and then, when asked again, "shook his head from side to side, indicating a no." *Id*. at 16:1-6.  The shaking of the head, rather than a verbal response, creates some ambiguity as to the meaning of the gesture. Nonetheless, Mr. Baiamonte did not shade his testimony to claim that Petitioner made a verbal "no" response.

For all these reasons, I find Mr. Baiamonte's version of events, and not

Petitioner's, to be credible.  Therefore, I will apply the law to the events as described by

Mr. Baiamonte.

III.   A<small>NALYSIS</small>

   A.  Standard of review

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be

released upon the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack, may move the court which imposed the

sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  Relief is

available under § 2255 only if "the claimed error constituted a fundamental defect

which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*,

442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted).  The court must

presume "that the proceedings leading to the conviction were correct"; the burden is on

the petitioner to demonstrate otherwise.  *Klein v. United States*, 880 F.2d 250, 253 (10th

Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

   B.  **Law regarding ineffective assistance of counsel for failure to file an appeal**

Pursuant to *Strickland v. Washington*, counsel is ineffective in violation of the

Sixth Amendment if a petitioner can demonstrate both that (1) his "counsel's

representation fell below an objective standard of reasonableness," and (2) "the

deficient performance prejudiced the defendant." 466 U.S. 668, 687-88 (1984). "[A]

lawyer who disregards specific instructions to perfect a criminal appeal acts in a

manner that is both professionally unreasonable and presumptively prejudicial."

*United States v. Snitz*, 342 F.3d 1154, 1155-56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*,

528 U.S. 470, 477 (2000)). This is true even if counsel believed that the appeal was

without merit. *United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007). Therefore,

if a defendant "actually asked counsel to perfect an appeal, and counsel ignored the

request," counsel was per se ineffective and "[the defendant] will be entitled to a

delayed appeal." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005). On the

other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly

cannot later complain that, by following his instructions, his counsel performed

deficiently." *Flores-Ortega*, 528 U.S. at 477.

When a defendant neither instructs counsel to appeal nor asks that an appeal not

be taken, counsel has a duty to "consult" with defendant—that is, "advis[e] the

defendant about the advantages and disadvantages of taking an appeal, and mak[e] a

reasonable effort to discover the defendant's wishes"—in two situations: (1) if a

"rational defendant would want to appeal" or (2) if "this particular defendant

reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 478-80.

"[A] highly relevant factor in this inquiry [is] whether the conviction follows a trial or a

guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480.  Failure to engage in this consultation when it is required constitutes objectively unreasonable representation under the first prong of *Strickland*.

### C.  Mr. Baiamonte was not ineffective

As discussed above, I have found Mr. Baiamonte's testimony regarding the discussions between himself and Petitioner about whether to appeal the sentence credible.  Mr. Baiamonte testified that he twice asked Petitioner whether he wanted to file an appeal.  *Instant Case, doc. 28* at 16:1-6, 22:21-23:8.  In response to the second question, Petitioner shook his head, which Mr. Baiamonte took to mean "no."  *Id*. at 16:1-6, 29:7-15.  Even assuming that Mr. Baiamonte misinterpreted this gesture, the nonverbal response falls within the range of ambiguous communications governed by *Flores-Ortega*.  *Flores-Ortega* requires that counsel consult with a defendant only if a "rational defendant would want to appeal" or if "this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  528 U.S. at 478-80.  Neither situation applies here.[4]

First, there is no reason to conclude that a rational defendant would have wanted to appeal because any appeal would have been frivolous.  *See Instant Case, doc. 28* at

---

[4] It is clear that Mr. Baiamonte did not consult with Petitioner regarding the advantages and disadvantages of an appeal.  He admits that after asking Petitioner at the close of the sentencing hearing whether he wanted to appeal, he did not have any further communication with Petitioner.  *Instant Case, doc. 28* at 16:7-21.  Thus, the only question before the Court is whether Mr. Baiamonte had a duty to consult in the first place.

12:24-13:3; *see Flores-Ortega*, 528 U.S. at 480 (noting it is proper to consider merits of appeal when evaluating whether rational defendant would have wanted to appeal). When reviewing sentences imposed by the district court, the Tenth Circuit "consider[s] whether the district court correctly applied the Guidelines and whether the ultimate sentence is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1114 (10th Cir. 2006). Petitioner does not argue that the sentencing court misapplied the Sentencing Guidelines; he merely contends that he should have been sentenced to the low end of the sentencing range—57 months. *Instant Case, doc. 28* at 47:6-19. Because Petitioner's sentence of 68 months was within the guideline range, it is presumed reasonable. *United States v. Guerrero-Cota*, 247 F. App'x 136, 139 (10th Cir. 2007) (citing *Rita v. United States*, 551 U.S. 338, 346-47 (2007)). Nothing in the record undermines that presumption. The 68-month sentence was three months shorter than the maximum sentence under the guidelines and the sentencing court provided a reasoned explanation of its decision. The court noted that Petitioner is a convicted felon, that he had been previously deported "subsequent to a crime of violence," and that he was found in possession of a Glock pistol and 17 rounds of ammunition. *Underlying Case, doc. 73* at 5:7-12; *see United States v. Morales-Madrid*, 209 F. App'x 757, 759-60 (10th Cir. 2006) (finding 57-month sentence for being an illegal alien in possession of a firearm reasonable in light of the particular facts of defendant's case, in part, because it was far below the statutory maximum). In fact, Judge Black could

14

very well have followed the government's request and denied Petitioner any reduction

for acceptance of responsibility.  *See United States v. Gonzalez-Gomez*, 85 F. App'x 94, 95

(10th Cir. 2003) (refusing to reduce the defendant's offense level for acceptance of

responsibility in part because the defendant waited until the day of trial to plead); *cf.*

*Underlying Case, doc. 73* at 4:15-24 ("I'm not going to deny him the two points [reduction

for acceptance of responsibility], but I'm also not going to sentence at the bottom of the

range as I normally do since it's clear that Mr. Villagomez did put the Court to the test .

. . .").  In that case, Petitioner's guideline range would have been 70 – 87 months.

Because Petitioner's sentence was, by all appearances, reasonable, Mr. Baiamonte had

no reason to believe that a rational defendant in Petitioner's position would want to

appeal.

Second, Petitioner did not demonstrate to counsel that he was interested in

appealing his sentence.  Shaking one's head, even if only out of despair and frustration

with one's recently pronounced sentence rather than in answer to a question, is not a

demonstration of interest in an appeal.  Indeed, it was entirely reasonable for Mr.

Baiamonte to interpret the shaking of Petitioner's head moments after being asked

whether he wanted to appeal to be the opposite—a demonstration of Petitioner's

disinterest in an appeal.  Petitioner also admits that he did not contact Mr. Baiamonte

after the sentencing proceedings to discuss an appeal.  *Instant Case, doc. 28* at 38:20-

41:25.  Given Petitioner's previous behavior—reaching out to Mr. Baiamonte whenever

he wished to discuss something—and the fact that any appeal was meritless, it was reasonable for Mr. Baiamonte to conclude that the lack of contact indicated that Petitioner did not want to appeal.  *Cf. United States v. Kelley*, 318 F. App'x 682, 687-88 (10th Cir. 2009) (finding reasonable demonstration of interest in appeal when defendant asked counsel to "take care of everything" after sentencing hearing and defendant sent his sister to consult with counsel regarding an appeal).

IV.   CONCLUSION

Because I have found Mr. Baiamonte's testimony to be more credible than that of

Petitioner, I find that Mr. Baiamonte asked Petitioner whether he wanted to file an

appeal and Petitioner shook his head sideways.  Based on these facts, I find that Mr.

Baiamonte was not ineffective in failing to file an appeal on Petitioner's behalf.  I

therefore recommend that the Court DENY Petitioner's Motion Under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, *doc. 1*, and

DISMISS this case with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of
a copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party
must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be
allowed.**